District Court Case No: 8:16-cv-03521-HMH-JDA

RECEIVED
USDC, CLERK GREENVILLE, SC

2017 MAR 22  AM 11:08

# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | CASE NO.: 15-04492-dd |
| Gup's Hill Plantation, LLC ) | |
| Debtor ) | |
| ) | **MEMORANDUM IN SUPPORT** |
| Bettis C. Rainsford, ) | **OF APPEAL FROM** |
| Appellant ) | **THE BANKRUPTCY COURT** |
| ) | |
| vs. ) | Adv. Pro. No. 16-80104 |
| ) | |
| Apex Bank, ) | District Court Case No: |
| Respondent ) | 8:16-cv-03521-HMH-JDA |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF APPELLANT'S APPEAL OF
THE ORDER OF THE UNITED STATES BANKRUPTCY COURT
GRANTING THE MOTION TO DISMISS THE APPELLANT'S
AMENDED COMPLAINT WITH PREJUDICE**

*/s/ Bettis C. Rainsford/*

Bettis C. Rainsford, *Pro Se* Appellant
P.O. Box 388
Edgefield, South Carolina 29824
Telephone: 803-637-5304
Facsimile: 803-637-6066
brainsford@rainsforddevelopment.com

March 20, 2017
Edgefield, South Carolina

1

# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | CASE NO.: 15-04492-dd |
| Gup's Hill Plantation, LLC ) | |
|     Debtor ) | |
| ) | **MEMORANDUM IN SUPPORT** |
| Bettis C. Rainsford, ) | **OF APPEAL FROM** |
| Appellant ) | **THE BANKRUPTCY COURT** |
| ) | |
|     vs. ) | Adv. Pro. No. 16-80104 |
| ) | |
| Apex Bank, ) | District Court Case No: |
|     Respondent ) | 8:16-cv-03521-HMH-JDA |
| ) | |

# Memorandum

# Table of Authorities

*Arnold v. Yarborough*, 281 S.C. 570, 572, 316 S.E. 2d 416, 417 (Ct. App. 1984)     8
*Barr*, 263 S.C. at 430, 211 S.E.2d at 234     6
*Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir.1984)     5
*Brown v. Nationsbank Corp.*, 188 F. 3d 579, 586 (5th Cir. 1999)     5
*Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)     5
*Clark v. Clark*, 271 S.C. 21, 244 S.E. 2d 743 (1978)     9
*Ex parte Jones*, 47 S.C. 393, 25 S.E. 285 (1896)     8
*Frasier v. Palmetto Homes*, 323 S.C. 240, 473 S.E. 2d 865 (Ct. App. 1996)     8
*Froneberger v. Smith*, 406 S.C. 37, 47 (Ct. App. 2013)     8
*Graves v. Serbin Farms, Inc.* 295 S.C. 391, 393 (Ct. App. 1988)     8
*Hall v. Benefit Ass'n of Ry. Emps.*, 164 S. C. 80, 83, 161 S.E. 867 (1932)     8
*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)     5
*Manufacturer's Hanover v. Mills*, 281 S.C. 374, 315 S.E. 2d 377 (1984)     9
*Mathis v. Brown & Brown*, 389 S.C. 299; 698 S. E. 2nd 773 (2010)     6
*Myers v. Guardian Life Ins. Co. of Am.*, 5 F.Supp 2d 423 (D.Miss. 1998)     5
*Poore v. Poore*, 105 S.C. 206, 89 S.E. 569 (1916)     9
*Schafer v. Barrier Island Station*, 946 F.2d 1075 (4th Cir. 1991)     9
*Speed v. Speed*, 213 S.C. 401, 408, 49 S.E.2d 588, 591 (1948)     6
*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)     5
*Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)     5
*Springob v. University of South Carolina* 407 S.C. 490; 757 S. E. 2nd 384     6
*Williams v. United Cerebral Palsy of Georgia, Inc.*, 3:13-cv-02779-JFA (2014)     5

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | CASE NO.: 15-04492-dd |
| Gup's Hill Plantation, LLC | ) | |
|     Debtor | ) | |
| | ) | **MEMORANDUM IN SUPPORT** |
| Bettis C. Rainsford, | ) | **OF APPEAL FROM** |
|     Appellant | ) | **THE BANKRUPTCY COURT** |
| | ) | |
|     vs. | ) | Adv. Pro. No. 16-80104 |
| | ) | |
| Apex Bank, | ) | District Court Case No: |
|     Respondent | ) | 8:16-cv-03521-HMH-JDA |
| _____ | ) | |

# Memorandum
## Table of Contents

| | |
|---|---:|
| Factual Summary | Page 1 |
| Standard of Review | Page 5 |
| Argument | Page 6 |
| Email Exchange Constituted a Clear Agreement | Page 6 |
| Respondent's Attorney had Actual, Apparent & Implied Authority | Page 6 |
| Actual Authority | Page 6 |
| Apparent Authority | Page 8 |
| Implied Authority | Page 8 |
| Conclusion | Page 10 |
| Exhibit A | Page 11 |
| Exhibit B | Page 13 |
| Exhibit C | Page 17 |
| Appendix | Page 19 |

# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | CASE NO.: 15-04492-dd |
| Gup's Hill Plantation, LLC | ) | |
|     Debtor | ) | |
| | ) | **MEMORANDUM IN SUPPORT** |
| Bettis C. Rainsford, | ) | **OF APPEAL FROM** |
| Appellant | ) | **THE BANKRUPTCY COURT** |
| | ) | |
| vs. | ) | Adv. Pro. No. 16-80104 |
| | ) | |
| Apex Bank, | ) | District Court Case No: |
|     Respondent | ) | 8:16-cv-03521-HMH-JDA |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF APPELLANT'S APPEAL OF
THE ORDER OF THE UNITED STATES BANKRUPTCY COURT
GRANTING THE MOTION TO DISMISS THE APPELLANT'S
AMENDED COMPLAINT WITH PREJUDICE**

Appellant Bettis C. Rainsford ("Appellant") files this Memorandum in support of his appeal of the Order of the United States Bankruptcy Court granting the Motion to Dismiss his Amended Complaint with Prejudice. Based upon the facts and reasons set forth hereinbelow, the Appellant's allegations state a claim upon which relief can be granted.

### Factual Summary

1. Appellant is a citizen & resident of Edgefield County, South Carolina.

2. Respondent is a bank which, upon information and belief, has its principal place of business in Knoxville, Tennessee.

3. On January 3, 2015, Appellant contacted by email Jim Clayton ("Mr. Clayton"), founder of Clayton Homes, Inc. and founder and principal owner of Clayton Bank and its affiliate, Bank of Camden, now known as Apex Bank ("Respondent"), to initiate discussions about Mount Vintage Plantation, a golf and residential community in Edgefield County, South Carolina ("the Plantation"), the golf course and town center of which the Respondent was the owner pursuant to its foreclosure suit and sale.

1

4. Appellant had been the founder and 50% owner of Mount Vintage Plantation until February of 2011, but had sold out to his former partner, Talmadge Knight ("Knight"), and was not involved as a principal or guarantor in the foreclosure actions on the golf course and town center which Respondent had brought.

5. However, as one who had a deep appreciation of the importance of the Plantation to the future of his home county of Edgefield, Appellant was greatly concerned about the lack of direction and the widely-held perception of financial instability of the Plantation in the aftermath of the 2008 market crash. Appellant had hoped that since Respondent had acquired the two most important amenities of the Plantation, it might be willing to acquire, with or without Appellant's participation, the unsold residential lots at the Plantation and thereby address the lack of direction and the perception of financial instability of the development.

6. Mr. Clayton responded to Appellant by referring Appellant to his "partner, Matt Daniels" ("Mr. Daniels"), president and CEO of Respondent, who subsequently had one of his bank's officers, Brad Hailey ("Mr. Hailey"), arrange a meeting with Appellant in Knoxville. At that meeting, Appellant supplied a great deal of information about the Plantation to Mr. Hailey, and was told that the Respondent was in the process of deciding what it would do with its investments.

7. Appellant continued to have email conversations with Mr. Clayton, trying to arrange to meet with him, but scheduling conflicts prohibited such a meeting during the first half of 2015.

8. In the summer of 2015, Kevin N. Molony, Esq. ("Mr. Molony") came to Appellant's office asking for Appellant's assistance in finding assets which might belong to Talmadge Knight ("Knight") and/or Michael Hooker ("Hooker"). Knight was the Appellant's former partner at Mount Vintage Plantation to whom the Appellant had sold his interest and Hooker was associated with Knight in buying and refinancing the Mount Vintage golf course and town center. They were both guarantors of loans which the Respondent had purchased and upon which the Respondent had foreclosed. Mr. Molony represented to Appellant that he was the attorney for Respondent and that he had complete authority to address all issues related to collecting on judgments for Respondent in South Carolina.

9. On September 15, 2015, Appellant sent another email to Mr. Clayton and Mr. Daniels again requesting a meeting with them to discuss Mount Vintage Plantation.

10. Mr. Clayton responded the next day, stating "With litigation pending, it would be in inappropriate and uncomfortable to communicate at this time." (See Exhibit A attached.)

11. Appellant responded immediately, stating: "I was not aware of any litigation pending other than the bank's efforts to collect deficiency judgments against Talmadge Knight and Mike Hooker, which, so far as I know, have nothing to do with me."

2

12. Just over two weeks later, on October 7, 2015, Mr. Molony came back to Appellant's office for another visit in which he raised the issue of two lots which Knight's company, P. K. Knight, LLC, had conveyed to a company of Appellant as part of his settlement with Knight which were subject to a mortgage now held by Respondent. Appellant acknowledged that Knight had given Respondent's predecessor a mortgage on these two lots and that he might be willing to provide Respondent with a deed-in-lieu-of-foreclosure in order to save the bank the trouble and expense of foreclosing on them.

13. In that same conversation, Mr. Molony told Appellant that he had discovered that Knight had a tract of land in Saluda which he had conveyed away, but which had been subject to the lien of SunTrust Bank. He indicated that Respondent wanted to pursue this property by purchasing the judgment of SunTrust Bank. When Mr. Molony told Appellant this, Appellant pointed out that the judgment was also against him and a company now owned by him, and that he and his company would be subject to being pursued by Respondent should it acquire the SunTrust judgment. Mr. Molony, as Respondent's attorney who had previously told Appellant that he had complete authority with respect to collecting judgments for Respondent in South Carolina, assured Appellant that Respondent only wanted the judgment to pursue Knight and did not intend to pursue Appellant on the judgment, and that, if Appellant cooperated with the conveyance of the lots in-lieu-of-foreclosure, Respondent would not pursue Appellant, his companies or his properties.

14. During this conversation, Appellant recalled something which he had not remembered before: that is, that Knight had told Appellant sometime in 2009 or 2010, that, in view of the dramatically deteriorating circumstances at their then jointly-owned Mount Vintage Plantation, he (Knight) had transferred a substantial amount of his personal assets (which Appellant interpreted to mean millions of dollars in cash or other assets) to his wife in order to avoid the claims of his creditors. Having remembered this, Appellant told Mr. Molony that if Respondent would formally agree to release him from the judgment and not pursue him or his companies, directly or indirectly, under this SunTrust judgment or other judgments flowing out of Mount Vintage, that he would provide additional information which might be of help in collecting from Knight.

15. Again alleging that he had the authority to bind Respondent, and agreeing that Respondent would not pursue Appellant on the judgment claim provided that Appellant would (1) give him the information about Knight which Appellant had, and (2) deed the lots to Respondent in-lieu-of-foreclosure, Mr. Molony asked Appellant what information he had about Knight. Appellant then told Mr. Molony about the conversation with Knight in 2009 or 2010 in which Knight had acknowledged that he had transferred a substantial amount of his personal assets to his wife to avoid his creditors, information which Appellant reasonably believed could result in a very substantial recovery for a creditor like Respondent which had a multi-million dollar claim against Knight.

3

16. Appellant then asked Mr. Molony if he would draft the documents to implement this agreement or if he would prefer that Appellant do it. Mr. Molony suggested that Appellant draft them. He also indicated that, although he had the authority in this matter to bind Respondent, an officer of Respondent, Brad Hailey, would actually execute the agreement. Thus, Appellant provided Mr. Molony by e-mail on October 7, 2015 the draft of an Agreement (Exhibit B attached hereto) and a Deed-in-Lieu-of-Foreclosure (Exhibit C attached hereto) for his review. Since Appellant had already provided him, in reliance upon their oral agreement, the information with respect to Knight's admission that he had transferred assets to his wife, Appellant did not include that element of the agreement in the written draft of the agreement.

17. After Mr. Molony reviewed these documents, he asked Appellant by his email of that same afternoon to add a sentence making clear that nothing in this agreement would prohibit Respondent from "pursuing litigation concerning assets owned, directly or indirectly, by Talmadge M. Knight and/or Michael Hooker." He further stated in that email that "If you are satisfied with adding that language, I'll get it to the bank and try to have this done by tomorrow." Appellant immediately responded that "I have no problem with your request and have made [the requested change] and attached the revised agreement hereto." (See email exchange of October 7, 2015 attached hereto as Exhibit D and the revised agreement as Exhibit E hereto.) Thus, by making the request to modify the document, the Respondent, by and through its agent, Mr. Molony, had made the Appellant a firm offer. By accepting the Respondent modification without change, the Appellant had accepted the offer. Thus, a firm and binding agreement had been formed between the Appellant and the Respondent.

18. Subsequently, when Appellant did not receive the executed document as he had been promised, Appellant called Mr. Molony and was told that Respondent's officer, Brad Hailey, had also fully agreed to the deal, but had just not gotten around to sending it back. After another week of waiting, Appellant called Mr. Molony again, and again Mr. Molony confirmed to Appellant that Hailey, as Respondent's officer, had agreed to the deal with Appellant. Mr. Molony stated that he had called Mr. Hailey several times to get the executed document back and was told that it was coming shortly. Mr. Molony then stated that he thought the best path now was to simply wait for Respondent to get it back to him; "that banks are always slow to get these things done."

19. In each telephone conversation, Appellant very carefully asked Mr. Molony whether Mr. Hailey had acknowledged that Mr. Molony had authority to bind Respondent and whether Mr. Hailey had also agreed to the deal. Mr. Molony repeatedly told Appellant that Mr. Hailey had. He reiterated in each conversation that he had been given the authority to bind Respondent in this matter; that the only reason Respondent wanted the SunTrust judgment was to pursue the tract of land owned by Knight in Saluda County; and that Mr. Hailey had confirmed that the bank was not going to pursue Appellant or his assets under any judgment that they may purchase.

4

20. On October 28, 2015, Mr. Molony informed Appellant that "the bank is getting the deal worked out with SunTrust and that's where their focus had been." In a subsequent telephone conversation, Mr. Molony further stated that he had been informed, presumably by Mr. Hailey, that "the bank's CEO has become involved and that he's in charge now." Because of the way that this unfolded, Appellant strongly suspected that the Respondent's CEO was deciding he would not stand by the agreement to which both Mr. Molony and Mr. Haley had agreed.

21. Respondent completed the acquisition of the SunTrust judgment on October 29, 2015.

22. Thus, the Respondent had entered into a firm and binding agreement with the Appellant in which, in exchange for (1) Appellant assisting Respondent by providing information with respect to possible assets belonging to Knight and (2) deeding two lots at Mount Vintage Plantation to Respondent in-lieu-of foreclosure, Respondent would not pursue any claim or litigation against Appellant or his company, Breithaupt Enterprises, LLC, or against any asset owned, directly or indirectly, by either of them by reason of Appellant's acquisition of any judgment or claim which it has, or may hereafter acquire, from SunTrust Bank or Branch Bank and Trust Company or from any other party arising out of any activity connected with Mount Vintage Plantation.

23. Appellant provided Respondent the information which he had with respect to Knight and tendered a draft of the deed-in-lieu-of-foreclosure to Respondent, but the Respondent rejected that performance and breached the agreement. Appellant fully performed his duties under the agreement.

## STANDARD OF REVIEW

A 12(b)(6) motion to dismiss for failure to state a claim is "rarely granted." *Myers v. Guardian Life Ins. Co. of Am.,* 5 F.Supp 2d 423 (D.Miss. 1998), citing *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986); *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir. 1981). The Court must construe the complaint in favor of the plaintiff and assume the truth of the facts pleaded. *Brown v. Nationsbank Corp.*, 188 F. 3d 579, 586 (5th Cir. 1999). The complaint should not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "Dismissal is never warranted because the court believes the plaintiff is unlikely to prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Even if it appears almost a certainty that the facts alleged cannot be proved to support the claim, the complaint cannot be dismissed so long as it states a claim. *Clark,* 794 F.2d at 970; *Boudeloche v. Grow Chem. Coatings Corp.,* 728 F.2d 759, 762 (5th Cir.1984). In *Williams v. United Cerebral Palsy of Georgia, Inc.*, 3:13-cv-02779-JFA (2014), the Court noted that "In deciding whether a complaint will survive a motion to dismiss, this court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."

# ARGUMENT

### The Email Exchange between the Appellant and the Respondent's Attorney Constituted a Clear Agreement Between the Parties.

The Court below ruled that the email exchange between the Appellant and the Respondent's attorney "is not sufficient to satisfy the requirements of S.C. Code § 32-3-10(4), because "the email from Mr. Molony was, at best, a counterproposal." First, it should be noted that the South Carolina Supreme Court has acknowledged that emails between parties can satisfy the Statute of Frauds. See *Mathis v. Brown & Brown*, 389 S.C. 299; 698 S. E. 2nd 773 (2010). See also *Springob v. University of South Carolina* 407 S.C. 490; 757 S. E. 2nd 384; *Barr*, 263 S.C. at 430, 211 S.E.2d at 234 (citing *Speed v. Speed*, 213 S.C. 401, 408, 49 S.E.2d 588, 591 (1948)) which provides "Under the statute of frauds, the form of the writing is not material, and may be shown entirely by written correspondence...."

Secondly, the conclusion of the Court below that "the email from Mr. Molony was, at best, a counterproposal" is clearly not the case. As is described in paragraphs 14 through 17 above, when Appellant drafted documents to memorialize the agreement between the Appellant and the Respondent and submitted them to Respondent's attorney, that attorney, Mr. Molony, replied, "I would *only* [Emphasis added] ask that we add a sentence stating something to the effect of, 'this agreement in no way prohibits apex bank form pursuing litigation concerning assets owned, directly or indirectly, by Talmadge M. Knight and/or Michael Hooker.'" He further stated in that email that "If you are satisfied with adding that language, I'll get it to the bank and try to have this done by tomorrow."

Appellant immediately responded that "I have no problem with your request and have made it and attached the revised agreement hereto." Thus, by making the request to modify the documents with *only* one change, the Respondent made the Appellant a firm offer. By accepting the Respondent's modification without change, the Appellant accepted the Respondent's offer. Thus, a firm and binding agreement had been formed between the Appellant and the Respondent. This was no "counterproposal"; it was an offer which was accepted without modification.

### Respondent's Attorney Had Actual, Apparent and Implied Authority to Bind Respondent to the Agreement.

The Court below also ruled that Respondent's attorney did not have actual, apparent or implied authority to bind Respondent to the Agreement. These conclusions are in error for the following reasons:

#### A. Actual Authority

The Court ruled that actual authority does not exist because there is no evidence of any communication or manifestation from Respondent to Mr. Molony granting him the

6

authority to bind Respondent to the agreement. Appellant believes this to be in error for a number of reasons.

Most importantly, a motion to dismiss is not to be decided upon the evidence: it is to be decided upon the allegations. Even so, the evidence supports the claim. Mr. Molony himself had asserted to Appellant on his first visit to Appellant's office that he had been given complete authority to address all issues related to collecting on judgments for Respondent in South Carolina. It is beyond debate that a lawyer is to be taken at his word on that matter.

Mr. Molony came to see Appellant on October 7, 2015, just two weeks after Respondent's principal, Mr. Clayton, had declined Appellant's request for a meeting with him personally, stating "With litigation pending, it would be inappropriate and uncomfortable to communicate at this time." Instead, he sent his lawyer. Mr. Molony's arrival at the Appellant's office on the heels of Mr. Clayton's statement is undeniable evidence that he was representing the Respondent. One would reasonably conclude from this sequence of events that Mr. Molony's statement that he had been given complete authority to address all issues related to collecting judgments for Respondent in South Carolina was, in fact, true.

Moreover, after Mr. Molony had made Respondent's firm offer by requesting the change in the language of the draft agreement, and after Appellant had accepted that firm offer by incorporating the Respondent's modification without change, Mr. Molony engaged in conversations on multiple occasions during the next few weeks with Respondent's officer, Mr. Hailey, in which he (Mr. Hailey) acknowledged that Mr. Molony had the authority to bind Respondent and that he accepted the agreement which Mr. Molony had negotiated. He further assured Mr. Molony that Respondent had consented to the deal. The evidence of Mr. Molony's actual authority are the multiple conversations between Mr. Hailey and Appellant *through Mr. Molony* which Mr. Molony subsequently described, repeatedly and in detail, to the Appellant. Respondent's officer, Mr. Hailey, knew, or should have known, that Mr. Molony was repeatedly assuring Appellant that he (Mr. Molony) had actual authority to bind the Respondent, and that the agreement which had been reached between the Appellant and Mr. Molony was binding upon the Respondent.

In these multiple telephone conversations during October of 2015, Appellant very carefully asked Mr. Molony (1) whether Mr. Hailey had acknowledged that he (Mr. Molony) had the authority to bind Respondent, and (2) whether Mr. Hailey had agreed to the deal. In these conversations, Mr. Molony repeatedly told Appellant that Mr. Hailey had so acknowledged his (Mr. Molony's) authority and agreed to the deal. Mr. Molony further reiterated that the only reason Respondent wanted the SunTrust judgment was to pursue the tract of land owned by Knight in Saluda County, and that Mr. Hailey had confirmed that the bank was not going to pursue Appellant or his assets under any judgment that they may purchase. This course of conversations between Mr. Hailey and Mr. Molony, as conveyed by Mr. Molony to Appellant in his multiple conversations with him, clearly established that Mr. Hailey had given Mr. Molony actual authority to bind

7

the Respondent. Again, Respondent's officer, Mr. Hailey, knew, or should have known, that Mr. Molony was repeatedly assuring Appellant that he had had actual authority to bind the Appellant, and that the agreement that had been reached between the Appellant and Mr. Molony was binding upon the Respondent.

Respondent may challenge those conversations as an evidentiary matter. But that is not to be done on a motion to dismiss which is to be based upon the allegations alone.

## B. Apparent Authority.

The Court below also ruled that apparent authority does not exist because, based upon its interpretation of the facts, there is no evidence of any communication or manifestation from Respondent to a third party granting Mr. Molony the authority to bind Respondent to the agreement. The Court cited *Froneberger v. Smith*, 406 S.C. 37, 47 (Ct. App. 2013) which was largely based on *Frasier v. Palmetto Homes*, 323 S.C. 240, 473 S.E. 2d 865 (Ct. App. 1996). However, in neither of these cases is there any evidence at all that the principal had ever indicated, directly *or indirectly*, to anyone that the agent had the authority to bind the principal.

Here, in the present case, it is not simply that Mr. Molony asserted that he had the authority to bind the Respondent. Such an unsupported claim by a salesman is exactly what has caused the law of agency to develop the concept that apparent authority must exist, if at all, by some manifestation by the principal, and not simply by the agent. But this case is quite different. Rather than a simple unsupported assertion of authority by the agent, we have here the series of multiple conversations between the principal, Respondent, by its officer, Mr. Hailey, and the agent, Mr. Molony, in which the principal *repeatedly* confirmed the agent's authority. The evidence of these "manifestations by the principal" are the multiple conversations between Mr. Hailey and Appellant *through Mr. Molony* which Mr. Molony subsequently described *repeatedly and in detail* to the Appellant. But it is not just the evidence at hand: it is what can be discovered. The Appellant had involvement with the principals, including Mr. Clayton, Mr. Daniel and Mr. Hailey, and the subject of those discussions was clear. In discovery, many more facts can be brought out.

## C. Implied "Attorney" Authority

The Court below cited South Carolina cases that have ruled that attorneys do not have implied or apparent authority to bind clients "outside the context of pending litigation." It cited *Ex parte Jones*, 47 S.C. 393, 25 S.E. 285 (1896), Graves v. Serbin Farms, Inc. 295 S.C. 391, 393 (Ct. App. 1988, *Arnold v. Yarborough*, 281 S.C. 570, 572, 316 S.E. 2d 416, 417 (Ct. App. 1984), and *Hall v. Benefit Ass'n of Ry. Emps.*, 164 S. C. 80, 83, 161 S.E. 867 (1932).

In *Ex parte Jones* the South Carolina Supreme Court stated "the employment of an attorney in a particular suit implies his client's assent that he do everything which the court may approve in the progress of the cause. Upon this distinction in a large measure

8

rest the certainty, verity, and finality of every judgment of a court. Litigants must necessarily be held bound by the acts of their attorneys in the conduct of a cause in court, in the absence, of course, of fraud." Id. at 397, 25 S.E. at 286. Other cases on point include *Clark v. Clark*, 271 S.C. 21, 244 S.E. 2d 743 (1978) which states that "Acts of an attorney are directly attributable to and binding upon the client."); *Poore v. Poore*, 105 S.C. 206, 89 S.E. 569 (1916) which states that "Absent fraud or mistake, where attorneys of record for a party agree to settle a case, the party cannot later repudiate the settlement."; and *Manufacturer's Hanover v. Mills*, 281 S.C. 374, 315 S.E. 2d 377 (1984) which states that an "attorney has implied or apparent authority to confess judgment in the other party's favor *where there is an action pending and the attorney is of record*."

The Court below also cited a Fourth Circuit Court of Appeals decision (*Schafer v. Barrier Island Station*, 946 F.2d 1075 (4th Cir. 1991)) in which two of the three judge panel rejected the implied (or apparent) authority of an attorney to bind a client to a contract absent express authorization from the client. However, the facts in that case are very different, quite complicated and involve a double hearsay issue which clearly colored the court's decision. (The evidence was that the attorney had been "advised" that the principals had talked with the salesman who called your client "to advise that the principals would agree . . . .") Moreover, the dissenting opinion by Circuit Judge Widener makes a compelling argument against the majority decision of the other two judges.

In this case, there is no doubt that the case was pending. SunTrust Bank had filed the foreclosure action back in 2011 and the Respondent has since pursued supplemental proceedings against the Appellant. That the Respondent was in the process of acquiring the judgment in the September of 2015 is clearly shown by the September 19, 2015 email of Respondent's principal, Mr. Clayton, in which he stated, "With litigation pending, it would be inappropriate and uncomfortable to communicate at this time." Certainly on that date, Mr. Clayton had the intention *and expectation* that the Respondent would be purchasing the SunTrust judgment. Indeed, it is highly likely that a deal had already been struck between the Respondent and SunTrust Bank before Mr. Molony came to Appellant's office, and that the banking officers were already at work drafting the final documents to consummate the transaction which were not executed until October 29, 2015.

Mr. Molony's arrival at the Appellant's office on the heels of Mr. Clayton's comment about "pending litigation" makes it clear that Mr. Molony was representing the Respondent in the matter of the SunTrust judgment. In that meeting on October 7th, Mr. Molony told the Appellant that it was he who had discovered the SunTrust judgment and brought it to the attention of the Respondent. Although the documents purchasing the judgment were not executed at the time of his visit to the Appellant, Mr. Molony was clearly representing the Respondent in the matter, and the only reason that he was not "of record" on October 7th was that the final documents had not yet been executed. Indeed, when the purchase was consummated, it was Mr. Molony who recorded the assignment in the Edgefield County Courthouse.

9

Thus, to deny Mr. Molony's implied authority as attorney for Respondent in the face of (1) Respondent's principal, Mr. Clayton, admitting that "litigation was pending," and (2) that Mr. Molony was the attorney who recorded the assignment in the Courthouse would be manifestly unfair to the Appellant. On the basis of these facts, there is no doubt that Appellant will be able to provide evidence to support the conclusion that Mr. Molony had implied "attorney" authority to bind the Respondent.

## CONCLUSION

Under these facts and theories which have been clearly set forth in the Complaint, the Appellant should not be deprived of the opportunity to undertake discovery which will allow him to supplement the factual basis for his claim and to prevail in the case. For the reasons set forth above, the Appellant respectfully requests that his appeal of the Order Granting the Motion to Dismiss with Prejudice be granted.

Bettis C. Rainsford, *Pro Se*
P.O. Box 388
Edgefield, South Carolina 29824
Telephone: 803-637-5304
Facsimile: 803-637-6066
brainsford@rainsforddevelopment.com

March 20, 2017
Edgefield, South Carolina

10

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | CASE NO.: 15-04492-dd |
| Gup's Hill Plantation, LLC, | ) | |
|     Debtor in Possession | ) | |
| | ) | |
| Bettis C. Rainsford, | ) | **CERTIFICATE OF SERVICE** |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | Adv. Pro. No. 16-80104 |
| | ) | |
| Apex Bank, Defendant. | ) | |
| _____ | ) | |

**CERTIFICATE OF SERVICE**

I, the Appellant Bettis C. Rainsford ("Appellant"), do hereby certify that I have served all counsel in this action with a copy of the pleading hereinbelow specified by mailing a copy of the same by United States Mail, postage prepaid, to the following addresses:

Pleadings:           Memorandum in Support of Appellant's Appeal

Counsel Served:      Nelson Mullins Riley & Scarborough, LLP
                     Attn: George B. Cauthen
                     Attn: Graham S. Mitchell
                     1320 Main Street, 17th Floor
                     Columbia, SC 29201

                     U. S. Trustee
                     U. S. Trustee's Office
                     Strom Thurmond Federal Building
                     1835 Assembly Street, Suite 953
                     Columbia, SC 29201

_____
Bettis C. Rainsford, *Pro Se*
P.O. Box 388
Edgefield, South Carolina 29824
Telephone: 803-637-5304
Facsimile: 803-637-6066
brainsford@rainsforddevelopment.com

March 22, 2017
Edgefield, South Carolina