

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

BETTIS C. RAINSFORD, §
   Appellant, §
 §
vs. § CIVIL ACTION NO. 8:16-03521-MGL
 §
APEX BANK, §
   Appellee. §

**MEMORANDUM OPINION AND ORDER**
**REVERSING THE DECISION OF THE BANKRUPTCY COURT**
**AND REMANDING FOR FURTHER PROCEEDINGS**

**I. INTRODUCTION**

This is a bankruptcy appeal. The Court reviews this appeal pursuant to 28 U.S.C. § 158(a)(1) and Rule 8001(a) of the Federal Rules of Bankruptcy Procedure. Having carefully considered the briefs, the record, and the applicable law, it is the judgment of the Court the decision by the Bankruptcy Court will be reversed and the matter will be remanded for further proceedings.

**II. FACTUAL AND PROCEDURAL HISTORY**

The Court takes the facts for purposes of this appeal from the order of the highly esteemed Bankruptcy Court granting Appellee Apex Bank's (Apex) motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismissing the amended complaint with prejudice (Dismissal Order). The Bankruptcy Court drew the facts from Appellant Bettis C. Rainsford's (Rainsford) amended complaint. The facts are as follows:

**August 18, 2015** – Gup's Hill Plantation, LLC's chapter 11 bankruptcy case was filed. Rainsford is the sole member of the debtor.

**Summer 2015** – Rainsford was approached by Kevin Molony, an attorney who represented himself to Rainsford as an attorney for Apex. Molony was attempting to obtain information about two of Rainsford's former business partners in connection with Apex's attempts to collect unrelated debts owed by those individuals to Apex.

**Early October 2015** – Rainsford again met with Molony. During that meeting, Molony advised Rainsford that Apex was considering the purchase of the judgment at issue here, and intended to pursue collection against Rainsford's former business partner. Rainsford raised the issue he was also obligated on that judgment. Rainsford and Molony discussed the possibility of Apex agreeing to forbear from pursuing Rainsford and his companies if that judgment was acquired, in exchange for Rainsford providing information to Apex regarding his former business partner's assets and executing deeds in lieu of foreclosure to Apex on two lots owned by one of Rainsford's companies and subject to a mortgage lien held by Apex. Rainsford provided information regarding his former business partner's assets to Molony during this conversation. Molony suggested that Rainsford draft documents to memorialize these discussions for execution by an officer of Apex.

**October 7, 2015** – Rainsford sent an email to Molony providing a draft settlement agreement and proposed deed in lieu of foreclosure. Molony responded on the same date, requesting a change to the documents. He stated, "If you are satisfied with adding that language, I'll get it to the bank and try to have this done by tomorrow. . . . [T]hat sentence would allow us to knock this out in my opinion."

**Mid-October 2015** – Rainsford made the requested change to the documents and sent them back to Molony. Rainsford followed up with Molony on several occasions, and in each conversation Molony stated the executed documents would soon be returned. Rainsford alleges Molony repeatedly advised he had authority to bind Apex to their agreement.

**October 28, 2015** – Molony advised Rainsford "the bank's CEO has become involved and that he's in charge now." The agreement and the deed in lieu of foreclosure were never signed by Apex.

**October 29, 2015** – Apex completed the acquisition of the judgment at issue from SunTrust Bank.

**May 10, 2016** – Apex filed its proof of claim in Gup's Hill Plantation, LLC's bankruptcy case. Apex asserts a claim in the amount of $1,439,286.39, based on the SunTrust judgment against Rainsford and his former business partner. The judgment attached to real property that Rainsford later transferred to Gup's Hill Plantation, LLC.

**May 31, 2016** – Rainsford commenced the underlying action in the Edgefield County Court of Common Pleas, asserting causes of action for breach of contract and enforcement of an agreement.

**July 14, 2016** – Apex removed the proceeding to the Bankruptcy Court.

**August 22, 2016** – Rainsford filed his amended complaint.

**August 26, 2016** – Apex filed its Rule 12(b)(6) motion to dismiss the amended complaint.

**September 30, 2016** – Rainsford filed his memorandum in opposition to the motion to dismiss the amended complaint.

**October 13, 2016** – The Bankruptcy Court entered its Dismissal Order.

**October 28, 2016** – Rainsford appealed the Dismissal Order to this Court.

The Court, having been fully briefed on the relevant issues, is now prepared to discuss Rainsford's appeal.

## III. STANDARD OF REVIEW

The United States District Court refers matters arising under Title 11 of the United States Code to the Bankruptcy Court pursuant to 28 U.S.C. § 157. Local Rule 83.IX.01, D.S.C. Final orders of the Bankruptcy Court are appealable to the District Court. 28 U.S.C. § 158. The Court reviews the Bankruptcy Court's dismissal of Rainsford's claims under Rule 12(b)(6) de novo. *See In re Dubois*, 834 F.3d 522, 526 (4th Cir. 2016). The United States Court of Appeals for the Fourth Circuit may only review "final decisions, judgments, orders, and decrees" entered by the district court. § 158(d). A district court's order is not "final" under § 158(d) if it remands the case with instructions for the bankruptcy court to conduct further proceedings. *See Mort Ranta v. Gorman*, 721 F.3d 241, 247 (4th Cir. 2013).

## IV. ISSUE ON APPEAL

Whether the learned Bankruptcy Court erred in dismissing Rainsford's amended complaint with prejudice on the basis of (1) a failure to satisfy the South Carolina Statute of Frauds (Statute of Frauds) inasmuch as the court held the e-mail exchange between Rainsford and Molony is insufficient to constitute a clear agreement between the parties, and (2) Molony lacked actual, apparent, and implied authority to bind Apex to the alleged agreement.

## V. DISCUSSION AND ANALYSIS

### A. *Statute of Frauds*

First, Rainsford takes exception to the Bankruptcy Court's dismissing his amended complaint for failure to satisfy the Statute of Frauds. The Statute of Frauds provides:

> No action shall be brought whereby:
>
> (1) To charge any executor or administrator upon any special promise to answer damages out of his own estate;
> (2) To charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person;
> (3) To charge any person upon any agreement made upon consideration of marriage;
> (4) To charge any person upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them; or
> (5) To charge any person upon any agreement that is not to be performed within the space of one year from the making thereof;
>
> Unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized.

S.C. Code Ann. § 32-3-10.

As noted above, in the Dismissal Order, the well-respected Bankruptcy Court held the alleged agreement between Rainsford and Apex failed to satisfy the Statute of Frauds. The court articulated that the e-mail allegedly establishing the agreement failed to satisfy the requirement of a writing containing the essential terms of the parties' agreement. According to the court, the e-mail from Molony to Rainsford constituted, at the maximum, a counterproposal.

"To satisfy the Statute of Frauds, every essential element of the contract must be expressed in a writing signed by the party to be compelled." *Fici v. Koon*, 642 S.E.2d 602, 604 (S.C. 2007). "The burden of proof is on the party seeking to enforce the contract." *Id.* Consequently, for the alleged agreement to be enforceable, a writing must exist containing both (1) the essential terms of the parties'

agreement and (2) the signature of an authorized representative of Apex, the party against whom Rainsford seeks to enforce the agreement. Exceptions to the Statute of Frauds, however, exist.

For instance, "[a]n oral contract within the Statute of Frauds may be taken out by performance where one party does some act essential to performance of the agreement resulting in loss to himself and benefit to the other." *Graham v. Prince*, 358 S.E.2d 714, 717 (S.C. Ct. App. 1987). Also, when the parties fully perform the contract, the Statute of Frauds no longer applies. *DeWitt v. Kelly*, 182 S.E.2d 65, 68 (S.C. 1971). There is also an exception such that the Statute of Frauds may not apply where there has been partial performance. *Settlemeyer v. McCluney*, 596 S.E.2d 514, 516 (S.C. Ct. App. 2004).

Construing the facts in the light most favorable to Rainsford, as the Court must do at the motion to dismiss stage, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Rainsford and Molony first discussed the terms of the alleged agreement in person, which included Apex's agreeing to forbear from pursuing Rainsford and his companies in exchange for Rainsford's providing information to Apex regarding his former business partner's assets and executing deeds in lieu of foreclosure to Apex on two lots owned by one of Rainsford's companies and subject to a mortgage lien held by Apex. Rainsford in fact provided information regarding his former business partner's assets to Molony during this conversation. Rainsford then drafted documents, including a deed in lieu of foreclosure, to memorialize the alleged agreement between the parties and submitted them to Molony.

Having made a de novo review of the Dismissal Order, the Court is unable to hold, as a matter of law, the alleged agreement fails to satisfy the requirement in the Statute of Frauds of a writing containing the essential terms of the parties' agreement, particularly given it may fall under one of the exceptions to the Statute of Frauds.

### B. *Molony's Authority to Bind Apex*

Second, Rainsford argues the Bankruptcy Court erred in holding Molony, as Apex's attorney, lacked actual, apparent, or implied authority to bind Apex to the alleged agreement. Rainsford insists Molony's statement he was Apex's attorney and he had complete authority to address all issues related to collecting on judgments from Apex in South Carolina clearly shows his authority to bind Apex to the alleged agreement.

South Carolina law recognizes actual, apparent, and implied authority. "[A]ctual authority is expressly conferred upon the agent by the principal." *Roberson v. S. Fin. of S.C., Inc.*, 615 S.E.2d 112, 115 (S.C. 2005). Apparent authority, on the other hand,

> is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him. Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief. Moreover, an agency may not be established solely by the declarations and conduct of an alleged agent.

*Froneberger v. Smith*, 748 S.E.2d 625, 630 (S.C. Ct. App. 2013) (internal citations and quotation marks omitted). Finally, the doctrine of implied authority states an attorney lacks the power to bind a client in matters outside the context of pending litigation absent express authority given by the client. *See Hall v. Benefit Ass'n of Ry. Emps.*, 161 S.E. 867, 868 (S.C. 1932). It "is the well-settled law of this state that the authority of an attorney of record to settle claims is limited to the claims presented by the pleadings in a given case and that any settlement that goes beyond these matters must be expressly agreed to by the client." *Graves v. Serbin Farms, Inc.*, 368 S.E.2d 682, 683 (S.C. Ct. App. 1988).

The doctrine of ratification, however, states a principal may ratify the authority of a purported agent by express or implied adoption and confirmation of an act or contract performed or entered into

7

on its behalf by the purported agent. *Lincoln v. Aetna Cas. & Sur. Co.*, 386 S.E.2d 801, 803 (S.C. Ct. App. 1989). "Ratification exists upon the occurrence of three elements[:] (1) acceptance by the principal of the benefits of the agent's acts, (2) full knowledge of the facts, and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangements." *Id.*

Here, Rainsford relies on statements made to him by Molony, the alleged agent, to establish Molony's purported authority to bind Apex. Specifically, Rainsford asseverates Apex repeatedly confirmed Molony's authority through multiple conversations between Molony and Rainsford in which Molony described the authority given to him by Apex's officer, Brad Hailey. Rainsford also declares there was litigation pending between himself and Apex involving the SunTrust judgment. Rainsford cites a September 19, 2015, e-mail from Jim Clayton, Apex's principal, stating, "With litigation pending, it would be inappropriate and uncomfortable to communicate at this time." ECF No. 17-1 at 1. Rainsford relies on this e-mail to assert Apex intended to purchase the SunTrust judgment and infers it is likely a deal had already been struck. Furthermore, Rainsford avers Molony's subsequent visit demonstrates he represented Apex in the matter of the SunTrust judgment, allegedly establishing Molony's implied authority to bind Apex to the purported agreement. Finally, Rainsford argues Apex has benefited from the alleged agreement, given his disclosure regarding his former business partner's assets during his conversation with Molony.

Again, when examining the motion to dismiss, the Court views the facts in the light most favorable to Rainsford as the nonmoving party. In doing so, the Court is unable to determine as a matter of law Molony lacked authority to bind Apex to the alleged agreement, via the doctrine of ratification or otherwise. The Court holds this matter is more properly suited for further proceedings to establish the merits of Rainsford's allegations.

## VI. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court the decision of the Bankruptcy Court is **REVERSED**, and this matter is **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

Signed this 3rd day of August, 2017, in Columbia, South Carolina.

s/Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATE DISTRICT JUDGE